# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

**JOSEPH MATERIA**                                         )
16265 Jetty Loop                                              )
Woodbridge, VA  22191                                   )
                                                                        )
                                       Plaintiff,              )
                                                                        )  Civil Action No.
                    v.                                            )  JURY TRIAL DEMANDED
                                                                        )
**ASHTON B. CARTER, SECRETARY**               )
**U.S. DEPARTMENT OF**                                 )
**DEFENSE**                                                    )
1400 Defense Pentagon                                     )
Washington, DC 20301-1400                              )
                                                                        )
                                       Defendant.           )
_____)

## COMPLAINT

1.      Colonel (Retired) Joseph Materia brings this action for damages based on the denial of his rights under Sections 501 and 505 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 791 and 794a, as amended, (hereafter the "Rehab Act"); the Age Discrimination in Employment Act, 29 U.S.C. § 621, _et. seq._ (hereafter the "ADEA") and gender discrimination, in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e _et seq._ (hereafter "Title VII").  Specifically, the United States Department of Defense, (hereinafter "DoD" or "Defendant") subjected Plaintiff Materia to a hostile work environment and discriminated against him because of his age (YOB: 1950); sex (male); disability (torn meniscus) and perceived disability; and failed to provide a reasonable accommodation.

## JURISDICTION AND VENUE

2.      The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, 1343(a)(4); 29 U.S.C. § 794a; 29 U.S.C. § 626(c); and 42 U.S.C. § 2000e-5.

3.       Pursuant to 28 U.S.C. § 1391(e), venue is proper in the District of Columbia which is where Plaintiff principally worked while employed with DoD and where, upon information and belief, the employment records relevant to the Complaint are located.

**THE PARTIES**

4.       Plaintiff Colonel (Retired) Joseph Materia is currently employed with DoD as a Program Analyst, GS-15-52300.  During the time relevant to this Complaint, COL Materia worked in the DoD/VA (Veterans Affairs) Collaboration Office in the Office of Under Secretary of Defense/Personnel and Readiness as an Associate Director coordinating senior-level joint transition and wounded warrior programs and initiatives primarily through the Joint Executive Committee organization.  COL Materia's job duties and responsibilities included responsibilities to prepare and provide reports, strategies and program updates directly to or for the Secretary of Defense, the Deputy Secretary of Defense and the Under Secretary of Defense, and other senior-level officials. He was responsible for joint committee meetings between DoD, VA and the Military Services. COL Materia provided input and briefings to the Secretary, Deputy Secretary and Under Secretary of DoD regarding the initiatives of the VA Collaboration Office.  He also provided communication, planning and operational oversight in support of DoD/VA interagency programs.  Most of COL Materia's job responsibilities involved working directly with, discussing with and addressing programs and issues with VA officials and counterparts in DC.  More than fifty percent (50%) of COL Materia's official and unofficial meetings and discussions with the VA were at VA locations in DC because of rotational hosting agreements.  He also had additional duties due to official reports and responses to the White House staff, Members of Congress, Congressional staffers, military personnel and officials from other government agencies and

veterans support organizations located in DC.  COL Materia is a graduate of West Point and had approximately thirty (30) years of military service before his retirement in 2004.

5.      Defendant Aston B. Carter is the Secretary of the Defense and COL Materia brings suit against Secretary Carter in his official capacity as provided by law based on his executive responsibility for administering the personnel policies of the DoD and his responsibility to enforce and promote equal employment opportunity throughout DoD.  During the relevant time period, DoD employed over 500 employees.

6.      Elizabeth F. Wilson, Executive Director of the DoD's VA Collaboration Office, is not a named defendant in this lawsuit, but is the responsible management official for the discriminatory acts and harassment against COL Materia as set forth in this Complaint.


## FACTS

7.      Plaintiff Materia adopts and incorporates by reference all averments in the foregoing paragraphs.

8.      On December 3, 2013, COL Materia fell and injured his leg, hand and foot in a work related accident.  COL Materia needed assistance getting up and walking after the accident, was driven home, took over-the-counter pain medications and used ice to control the swelling and pain.

9.      COL Materia was in extreme pain the next day, December 4, but nonetheless reported to work after taking non-prescription pain medications.  He reported to duty because he had to support an important meeting with the VA, which he had planned and coordinated with his counterparts in DC.

10.     COL Materia also reported the accident to colleagues and his supervisor, Elizabeth Wilson.  Ms. Wilson was visibly annoyed when COL Materia told her about his accident and stated she did not have time to discuss the matter with him.

11.     COL Materia's hand and leg continued to swell and cause him pain. He initially thought that he might have broken his hand because it was more painful than his knee. Accordingly, on December 5, 2013, he sought and received medical treatment.  COL Materia was diagnosed as having a sprained right hand, contusions, swelling and numbness in his left foot.  The most serious injury was to his right knee which was eventually diagnosed as a torn meniscus. His physician informed him that the non-prescription pain medication he had taken may have camouflaged the pain he was experiencing with his knee.  COL Materia was given crutches to assist with walking and prescribed pain medications.

12.     After seeking medical treatment and learning about the severe extent of his injuries, COL Materia requested permission from Ms. Wilson to work from home when he returned to work the following week.  COL Materia's physician advised him to work from home and to avoid commuting to work.  COL Materia needed to telework in order to prevent further injury, to manage his pain, to wear loose-fitting clothing and because of his reduced mobility commuting.  COL Materia tried several times to speak to Ms. Wilson about teleworking as an accommodation.  Each time she responded to him that she was "too busy."

13.     Unable to discuss his need for an accommodation with Ms. Wilson, COL Materia approached Dave Cutler, an office counterpart who validated his time and attendance.  Mr. Cutler informed COL Materia that Ms. Wilson did not want him to telework.  She gave no reason for her refusal to allow this accommodation.  COL Materia was baffled by Ms. Wilson's response.  Not only did COL Materia have a medical reason for needing to work from home, given his reduced

mobility, but also his job duties and responsibilities could be successfully performed remotely. Furthermore, it would be within Personnel and Readiness policy guidelines to allow telework as an accommodation.

14.     In fact, Ms. Wilson was also treating COL Materia differently than another younger, female employee in the office, Rachael Magann, a full-time, telework employee who had been working at home for months.  On occasion, Ms. Magann would come into the office for a meeting, but otherwise she teleworked full-time.  When COL Materia mentioned to Mr. Cutler that Ms. Magann was allowed to telework, he responded, "Don't go there, Rachel is different."

15.     COL Materia continued to update Mr. Cutler about his medical condition, doctor appointments and treatment, as well as his continuing need to telework as an accommodation. Whenever COL Materia mentioned telecommuting to Mr. Cutler, he responded, "Don't go there. The boss [Ms. Wilson] doesn't want you to telework."  COL Materia also continued his attempts to dialogue with Ms. Wilson about his condition and telework as an accommodation, but whenever he approached her, she was dismissive and again told him she was "too busy" to discuss the matter with him.

16.     COL Materia's condition continued to worsen and, in February 2014, he had knee surgery for his torn meniscus.  COL Materia had to take time-off from work for the surgery, additional tests, recovery, and follow-up appointments.  His physician also advised him to telework so that he could apply ice to his knee and to keep from bearing weight on his knee and leg to reduce pain, swelling and to assist with his recovery.

17.     After his surgery, for approximately a week, Ms. Wilson allowed COL Materia to use a cart to get around the office.  However, this was an inadequate accommodation because it ignored the difficulty COL Materia had commuting, as well as the additional pain caused by the

fact that he had to work without ice, proper elevation for his knee and proper protective padding. COL Materia requested that he be allowed to continue using the cart but he was only approved for an additional week and thereafter was required to return the cart. COL Materia also continued to request telework as an accommodation because his primarily difficulty with his injury was getting to and from work. The additional stress caused by not being able to properly attend to his injury resulted in increased pain and slowed COL Materia's recovery.

18.     During his recovery from surgery, COL Materia was unable to drive and commute to work without great pain and difficulty. Accordingly, in April 2014, he again requested permission to telework from home as a reasonable accommodation for his disability. Ms. Wilson again refused to speak with COL Materia, as had been a recurring pattern with her. Instead, he was directed to interface with Mr. Cutler who only had attendance record-keeping responsibilities and was not COL Materia's supervisor. Mr. Cutler continued to indicate that Ms. Wilson did not want COL Materia to telework. COL Materia also found it embarrassing and troubling that he was forced to discuss his illness and medical condition with an office colleague, as such personal matters should have been addressed privately, with discretion and confidentiality.

19.     Given no other options, COL Materia requested permission through Mr. Cutler to telework for two days. Because COL Materia was not afforded the opportunity to telework earlier when he was unable to commute, he no longer had any leave remaining. He had exhausted both sick leave and annual leave for appointments and treatment related to his injury. COL Materia also explained to Mr. Cutler that he was using a full day of leave whenever he had a medical appointment. In response, Mr. Cutler told COL Materia, several times, that Ms. Wilson did not want him to telework even though he could perform all his duties from home.

20.     Eventually, COL Materia exhausted his leave, but still needed leave for medical appointments. Desperate, he succeeded with another attempt to ask Ms. Wilson directly if he could telework. He explained to her that he had a permanent disability, that he needed treatment and that his injury was painful, requiring rest. Ms. Wilson begrudgingly said "OK," but appeared angry. She also conveyed to COL Materia that she did not like him working from home, despite the fact that she permitted another female employee, Ms. Magann, to telework. Ms. Wilson herself was often absent from the office for hours each week working out at the gym, visiting with friends or running errands. She told him that he needed to request permission through Mr. Cutler and then dismissed him after a few minutes, again stating that she was "too busy" to talk further. Subsequently, COL Materia requested and took telework on two separate days in April 2014.

21.     Mr. Cutler later told COL Materia that Ms. Wilson was angry about him requesting to telework and specifically implied that she threatened to get rid of him. Mr. Cutler showed COL Materia an email message from Ms. Wilson to Mr. Cutler which said that, as far as she was concerned, COL Materia "could work from home permanently." COL Materia was shocked because Ms. Magann continued to work from home as she had been doing since Ms. Wilson became the supervisor approximately eight (8) months earlier. COL Materia asked Mr. Cutler if the email message meant she would fire him. Mr. Cutler reluctantly responded yes, she would either fire COL Materia if she could or force him to resign.

22.     Thereafter, COL Materia tried to speak to Ms. Wilson and she again said she was "too busy." Unable to speak to Ms. Wilson about the issue, COL Materia continued to press for an explanation from Mr. Cutler. He also pointed out to Mr. Cutler that he could complete all his job duties as Associate Director from home, and that Ms. Magann was successfully working from home, as well as countless other employees in DoD. COL Materia also explained that his work-

related injury had consumed all his leave, that his injury was painful and that he needed relief from commuting.  COL Materia never asked for full-time teleworking, only situational, as needed and coordinated to meet work demands as advised by Mr. Cutler.  Contrary to the treatment COL Materia received from Ms. Wilson, who simply did not want COL Materia to telework, teleworking has been encouraged for all Federal employees in a Presidential memorandum. Further, DoD is also committed to permitting employees to telework regularly, per policy.  COL Materia only needed approval to participate in the DoD Telework Program, like thousands of other DoD employees who received approval from their supervisors to participate.  Mr. Cutler admitted to COL Materia that the problem was Ms. Wilson, who simply did not want to approve COL Materia's participation in the DoD Telework Program as an accommodation.

23.     On or about April 29, 2014, COL Materia learned that his co-workers, namely Ms. Magann and Ken Senn, had received annual performance bonuses from Ms. Wilson and that he had been excluded, even though all his performance feedback had been positive.  During this rating period, COL Materia received an "above average" rating without any negative comments. However, contrary to DoD policy regarding evaluation of employees, COL Materia did not receive interim feedback from Ms. Wilson, his normal rating official, prior to the rating.  Instead, Mr. Cutler, who was not COL Materia's supervisor and who had not participated in the evaluation process, finally signed off on COL Materia's evaluation.  Mr. Cutler told COL Materia to "just sign the review" because he did not need evaluations anymore.  Mr. Cutler also told him that he would receive no monetary or time-off bonus, which COL Materia had received in prior years for his consistently above average performance.

24.     During this time period, Mr. Cutler started to repeatedly remind COL Materia about his age and asked questions related to his age.  Specifically, Mr. Cutler asked COL Materia how

long he intended to work, insinuating that COL Materia should quit or retire.  Mr. Cutler was reticent about asking these questions and implied that these were concerns coming from Ms. Wilson, not him.  COL Materia told Mr. Cutler that his age and the amount of time he would continue to work should not be factors in how he was treated or considered as part of his telework accommodation request.  Mr. Cutler apologized, but suggested that COL Materia not request to telework because Ms. Wilson threatened to take adverse action.

25.     COL Materia also reminded Mr. Cutler that his surgeon submitted documentation to the Department of Labor which confirmed that he had a permanent disability from the injury incurred at work on December 3, 2013.  COL Materia's injury restricted his mobility, he had difficulty walking and driving, and it was not easy to commute to and from work every day.  Mr. Cutler expressed his same threatening look of concern and advised COL Materia again that he did not have a long period of time left to work before he could retire.  Mr. Cutler suggested that COL Materia should not bring up the telework issue again, indicating that Ms. Wilson was against teleworking.

26.     In addition to his disability, COL Materia observed that Ms. Wilson was also treating him unfairly because of his age.  For example, he was the last member of the staff to have an initial one-on-one introductory discussion with Ms. Wilson and it was repeatedly postponed. When COL Materia finally had the meeting to discuss his responsibilities, evaluation details and work operations, she was dismissive, stating, "I know you have been doing this for a long time.  I have no need to talk with you," and abruptly terminated the meeting.  Ms. Wilson was also condescending and aloof during meetings with COL Materia and often made comments like, "I don't care about your past experience" or "You have been doing this a long time."  Ms. Wilson

also would overlook COL Materia and rejected his experience and knowledge in favor of seeking opinion and input from much younger and inexperienced contractors.

27.     Additionally, Ms. Wilson diminished COL Materia's duties and would not permit him to attend meetings with senior officials which he had previously attended for years because he was supposedly "too old." He received no professional guidance from Ms. Wilson, and received no training or professional development opportunities. And, she excluded COL Materia from discussions and information sharing opportunities related to his job responsibilities.

28.     COL Materia also noticed that Ms. Wilson rarely spoke to him or another over-60 male employee, namely Mr. Senn. Instead, Ms. Wilson preferred to engage with younger staff members rather than COL Materia. She scheduled meetings with inexperienced contractors to discuss issues he was responsible for and did not permit COL Materia to attend. On the occasions when COL Materia requested to speak to her, she never had time, despite the fact that her calendar indicated that she had no appointments scheduled. COL Materia's work station was located right outside Ms. Wilson's office door so it would have been easy for her to communicate with him if she wanted to. COL Materia also noticed that Ms. Wilson seemed to be annoyed, based on her facial expressions and demeanor, whenever he tried to keep the new contractors busy by helping them learn new processes and working directly with them to give them training projects.

29.     Exacerbated, COL Materia again sent Ms. Wilson an email about his need to telework as an accommodation for his injury. He even apologized to Ms. Wilson for sustaining the injury because he found her attitude to be indifferent, and even angry, whenever he mentioned his injury. Asking Ms. Wilson for telework was very stressful to COL Materia because he was aware of Mr. Cutler's comments about her prejudice towards him. Ms. Wilson replied to his email stating that she was not a fan of him teleworking and instructed him, once again, to communicate

with Mr. Cutler, his peer, rather than her.  Accordingly, COL Materia coordinated directly with Mr. Cutler and requested two telework days which were well within the DoD policy guidelines and telework agreement.  COL Materia took a telework day on May 9, 2014, after making an appropriate request and providing notification per policy.

30.     Apparently COL Materia's telework infuriated Ms. Wilson because when he returned to work on May 12, 2014, Mr. Cutler informed him that he was being immediately "reassigned."  COL Materia was stunned because there was no reason which would substantiate an immediate reassignment.  He had not requested a reassignment and had plenty of work to do, including preparing for an important conference on May 28.  Further, he always received excellent performance ratings.  COL Materia asked Mr. Cutler about the reassignment.  Mr. Cutler explained that Ms. Wilson had asserted that the office was moving in a "new direction" and COL Materia was being reassigned.  When asked repeatedly, Mr. Cutler just responded he did not know why but was told by Ms. Wilson that the office was "moving in a new direction."  COL Materia knew that such an explanation is typically used when there is no business or operational reason to remove an unwanted employee.  Mr. Cutler also informed COL Materia that Ms. Wilson wanted him to "move immediately," which also implied that the reassignment was punitive or vindictive.

31.     Ms. Wilson's claim that the office was "moving in a new direction" was nothing more than a poor excuse to cover up for her true motive – she wanted to eliminate COL Materia because he was an older employee with a disability.  As a point of fact, not only was COL Materia the oldest employee in the DoD/VA Collaboration Office, he also had the most seniority and experience because he had been with the office since it was originally established in 2007.

32.     COL Materia next asked Mr. Cutler if the reassignment was related to his age.  He reminded Mr. Cutler that he had been preparing strategies to move the office in new directions for

several years.  Mr. Cutler would not answer COL Materia's question directly, but admitted that he did not know of any reason for COL Materia to be removed from the office.  Mr. Cutler advised COL Materia to simply do as instructed, accept the reassignment and go to a place where he would be treated better.  As he did previously, he referenced COL Materia's age and expected time to retirement, implying that COL Materia could leave DoD within a short period of time, as if this should placate the fact that he was being forced into leaving his job.

33.     COL Materia next asked Mr. Cutler if the reassignment was in retaliation for teleworking.  In response, Mr. Cutler divulged that Ms. Wilson told him that she felt "challenged" by COL Materia and that this was directed at him, suggesting that she was putting COL Materia in his place for questioning her.  COL Materia also asked Mr. Cutler if Ms. Wilson was going to speak to him about the reassignment, but he did not know the answer to that question.

34.     COL Materia expected Ms. Wilson to explain such a sudden and abrupt decision, as well as to discuss outstanding work assignments and anticipated duties in the new position.  He requested to speak directly with her.  As it turned out, Ms. Wilson did not speak to COL Materia at all during his last few days in the office, even though she had significant free time on her calendar.  Ms. Wilson did not explain why he was being required to relocate, did not discuss subsequent coverage of his job duties and said nothing about transitioning to the new office.  These are all concerns that are normally addressed by a supervisor when an employee leaves.  Ms. Wilson even disappeared from the office on COL Materia's last day of duty even though her calendar was empty, apparently to avoid the embarrassment of ignoring a staff member.

35.     COL Materia also later learned that, although he had helped to establish the office in 2007 as an original member of the group, Ms. Wilson did not approve giving him a customary

staff farewell luncheon, a send-off which had been afforded to all the other departing employees in the office, even contractors who were assigned for short periods of time.

36.     COL Materia was assigned to work in a new office with Chief of Staff COL Michael Godfrey as his initial point of contact.  In his first meetings with COL Godfrey, COL Mary Mayhugh and Mr. Kevin Kelly, a senior executive, they all asked whether COL Materia could perform his duties effectively because Mr. Cutler had told them that he was a major problem for Ms. Wilson.  In fact, they all admitted that the assignment discredited COL Materia's status and that there was significant embarrassment associated with his abrupt reassignment to an adjacent office.  COL Materia was crushed by this revelation, particularly since it implied poor duty performance, which was untrue.  COL Materia's 2012 performance rating was "exceptional, level 1" and he was described as a "role model, outstanding, and superior."  During 2013 and 2014 he was rated "above average" and received no negative performance comments.  Now, in his new reassignment, instead of it being a positive experience, he was going into a new work assignment with a stigma because Ms. Wilson and Mr. Cutler had characterized him in a negative light.  COL Materia's duties with DoD were reduced because of Ms. Wilson's negative and prejudicial influence, and remains diminished to this day.

37.     The following Monday after COL Materia started the new assignment, a younger and very inexperienced contractor, namely Josh Maddox, informed COL Materia that Ms. Wilson had assigned him COL Materia's former responsibilities, including his duties involving the coordination and management of the Joint Executive Committee ("JEC").

38.     The JEC is a senior level, Congressionally-mandated DoD and VA forum with extensive subcommittees and working groups which support Service members, veterans and wounded warriors.  As Associate Director, COL Materia had been responsible for managing the

JEC for the past four years, as well as a Wounded Warrior committee prior to that.  The previous JEC meeting COL Materia planned and coordinated was hosted by Under Secretary Wright who described the conference as "the best ever" and gave COL Materia a personal note praising his work.  Furthermore, another JEC conference which COL Materia had proposed and planned for over a year was scheduled to take place in Washington, DC on May 28, 2014, just weeks after his unexpected reassignment.  Ms. Wilson now would take credit for the plans COL Materia had established and gave execution responsibilities to Mr. Maddox, the younger and less experienced contractor.

39.     COL Materia was also very disheartened to learn that he had no real job duties in his new position and there had been no reason to move him immediately, except for Ms. Wilson's vindictiveness and bias.  In fact, COL Materia had no substantive duties for weeks, except for answering the phone and running errands for lower ranking staff members in his new office.  He was informed by COL Godfrey that they did not know what he would be doing, but they would "find something" to keep him busy.  It was obvious that COL Materia was not moved to the new office to fill a required or necessary duty.  This confirmed that the forced reassignment by Ms. Wilson was nothing more than a sham, manufactured by her to remove COL Materia from his position.

40.     After COL Materia transitioned to the new office, he eventually learned that he had been placed on a temporary detail status and that he could be detailed to another assignment at any time.  His original job billet remained in his previous office.  As a result, COL Materia had no job stability or security.  He also was not given any specific duties or responsibilities except for answering the phone and running errands.  He had no job title and he no longer performed work that was comparable or similar to the work and responsibility level he was previously doing as the

Associate Director of his prior office.  COL Materia was told that he was accepted into the new

office as a favor and should not expect too much in regards to his job responsibilities.  COL Materia

received no training and no career guidance.  Instead, he was asked to remain in the office and

answer the phone while other members attended staff meetings.  He rarely had an opportunity to

leave the office except to run errands, which ironically was painful to his injured leg.

41.     Furthermore, COL Materia never received any reason or explanation for his

reassignment.  Nor did he receive any documentation, such as an SF-50 form, explaining the

involuntary reassignment, what his current duties are, job title or the duration of the detail.  Even

worse, COL Materia learned that the Under Secretary of Defense for Personnel and Readiness

formally downsized and reorganized the organization he was transferred into.  As a consequence,

the new office became part of a reorganization and COL Materia subsequently was required to

move three times and, when he was later moved for a fourth time, he lost his job without warning

or discussion.  In contrast, the DoD/VA Collaboration Office, where he worked previously, was

not subject to downsizing and has remained intact.  It also hired a new, younger and inexperienced

government employee to the open position previously held by COL Materia and this employee

now performs COL Materia's former duties.   Because Ms. Wilson forced him to take a

reassignment, COL Materia has lost his title, Associate Director, his permanent position within

DoD, has had to move his work area four times and has diminished job duties because of the

tarnished reputation Ms. Wilson manufactured to remove him.

42.     COL Materia has additionally been the butt of continual jokes in his current office

due to the forced reassignment.  He immediately received an embarrassing nick name, "Jumping

Joe," which implies that he was jumped out of his last job and will continue to be jumped around

Personnel and Readiness without a permanent assignment.  He has been mocked by colleagues as Jumping Joe for the past two years.

43.    COL Materia also learned that, on or about June 4, 2014, Ms. Wilson disclosed to her staff that he had filed a discrimination complaint against her with the EEO office.  Ms. Wilson disclosed this information with the intent to intimidate the staff members and to discourage them from potentially assisting with his case, such as being witnesses.  By speaking about COL Materia's EEO complaint, Ms. Wilson also intended to impress upon the staff the negative consequences of making an EEO complaint, as demonstrated by COL Materia's forced reassignment and diminished subsequent job responsibilities.   Ms. Wilson's public and open announcements about COL Materia's EEO complaint was made known to other staff members in his new office.  COL Materia felt shunned and ostracized because employees who knew him or associated with him began to avoid him and declined invitations to meet or have lunch together.  Ms. Wilson intentionally created an atmosphere whereby employees, particularly young contractors, were fearful and afraid of losing their job if they associated with COL Materia as they previously had.

44.    To add further insult to injury, on the very first day that he reported to his new position, he found a box of "bonbons" on his desk that Ms. Wilson had arranged to have delivered by a contractor who used to work for COL Materia.  Ms. Wilson, who avoided speaking to COL Materia and refused even a farewell gathering, did not intend for it to be a friendly gesture.  Rather, it was an insult and Ms. Wilson wanted to send a message to COL Materia that, in her opinion, he was just some old, worthless guy who no longer had anything worthwhile to do except sit around and eat "bonbons," as stereotyped on TV.

45.     As a direct and proximate result of the unlawful acts of DoD and/or agents or employees acting on its behalf, including Ms. Wilson among others, COL Materia sought counseling sessions from EAP as well as from a private therapist for depression and anxiety about his work situation and being discriminated against.  He was unable to sleep as result of worry and stress about the work environment and took medications for sleep deprivation.  COL Materia suffered from elevated blood pressure and took medications to control his stress and hypertension. He was hospitalized for a supraventricular tachycardia (SVT) attack due to stress related to his job situation and the discrimination he experienced.  This required emergency room treatments for chest pain and irregular heart rhythm.  Eventually this condition worsened and was diagnosed as atrial fibrillation in 2015.  COL Materia underwent a six-hour heart and pulmonary vein medical procedure in November 2015 as a result.

46.     As a direct and proximate result of the unlawful acts of DoD and/or agents or employees acting on its behalf, including Ms. Wilson among others, COL Materia has suffered from emotional distress.  COL Materia also now suffers from severe depression and anxiety arising from the negative treatment by Ms. Wilson following his work-related injury and the denial of telework, per normal DoD policy, to accommodate his medical condition and difficulty commuting.   COL Materia also experienced emotional distress as a result of his forced reassignment, diminished work duties, tarnished reputation, unsecure job status and the current loss of his job and reassignment.  Further, COL Materia has been denied an appropriate evaluation and opportunity for a bonus, training opportunities, career guidance and job duties commensurate with his skills, experience and talent.  He has also been denied advancement in his career for discriminatory reasons related to the loss of his job title and duties as Associate Director.   These unlawful acts of DoD and/or agents or employees acting on its behalf, including Ms. Wilson among

others, have caused COL Materia embarrassment, humiliation and indignity, as well as damage to his professional reputation.

47.     As a direct and proximate result of the unlawful acts of DoD and/or agents or employees acting on its behalf, including Ms. Wilson among others, COL Materia has suffered grievous harm to his professional career.  This harm includes, but is not limited to, loss of bonus and other merit based awards; loss of annual and sick leave and other benefits associated with employment.  Further, COL Materia has suffered from a loss of professional status, career-enhancing and advancement opportunities as a result of being forced to take a reassignment by Ms. Wilson and the loss of his job title and duties as Associate Director.  Ms. Wilson replaced COL Materia with a younger, female employee with less experience and seniority, transferred him without the customary farewell afforded to others in the office, and relocated him to a position on a lower level staff office without duties.  COL Materia has also been subsequently reassigned numerous times and, in November 2015, lost his position without notice or reason.

## EXHAUSTION OF REMEDIES

48.     COL Materia has exhausted all administrative requirements that apply to the processing of his complaint, including the filing of an informal and a formal complaint with the EEO office and the issuance of a Final Agency Decision.

## STATEMENT OF CLAIMS

### COUNT I:  Violation of the Rehabilitation Act of 1973, As Amended Disability Discrimination.

49.     COL Materia adopts and incorporates by reference all averments in the foregoing paragraphs.

50.     The Rehab Act prohibits federal agencies from discriminating against its employees because of a disability.

51.     Defendant, DoD, was, at all times relevant to this matter, the employer of COL Materia for all purposes under the Rehab Act.

52.     As a result of an on-the-job injury on December 3, 2013, COL Materia fell and injured his leg, hand and foot.  COL Materia sought and received medical treatment.  He was initially diagnosed as having a sprained right hand, contusions, swelling and numbness in his left foot.  He was given crutches to assist with his mobility.  In February 2014, COL Materia had knee surgery for a torn meniscus.  COL Materia also had to take time-off from work for the surgery, additional tests, recovery, and follow-up appointments.  His physician also advised him to telework so that he could apply ice to his knee and to keep from bearing weight on his knee and leg to reduce pain, swelling and to assist with his recovery.  COL Materia used a cart for approximately three (3) weeks to get around the office.

53.     COL Materia's disability (torn meniscus) caused him to be substantially limited in the major life activities of working, walking, and lifting.  COL Materia also had difficulty driving and commuting to work.  As a result of a workers' compensation claim, the Department of Labor rated COL Materia with a partial disability rating and found that he suffered a permanent impairment in his right leg.

54.     DoD and/or agents or employees acting on its behalf, including Ms. Wilson among others, knew of COL Materia's disability during the relevant time period for this Complaint.

55.     DoD and/or agents or employees acting on its behalf, including Ms. Wilson among others, discriminatorily reassigned COL Materia to a position with lower level responsibilities and stripped him of his title as Associate Director and the corresponding job duties and responsibilities of that position.  Further, COL Materia was discriminatorily denied an appropriate evaluation and performance bonus.

56.     As a direct and proximate result of the unlawful acts of DoD and/or agents or employees acting on its behalf, including Ms. Wilson among others, COL Materia has suffered from emotional distress from being denied a performance bonus; forced to take a reassignment by Ms. Wilson; and being denied advancement in his career for discriminatory reasons related to the loss of COL Materia's job title and duties as Associate Director.   The unlawful acts of DoD and/or agents or employees acting on its behalf, including Ms. Wilson among others, have caused COL Materia embarrassment, humiliation and indignity, as well as damage to his professional reputation.

57.     As a direct and proximate result of the unlawful acts of DoD and/or agents or employees acting on its behalf, including Ms. Wilson among others, COL Materia has suffered grievous harm to his professional career.   This harm includes, but is not limited to, loss of bonus and other merit based awards; loss of annual and sick leave and other benefits associated with employment.   Further, COL Materia has suffered from a loss of professional status, career-enhancing and advancement opportunities as a result of being forced to take a reassignment by Ms. Wilson and the loss of COL Materia's job title and duties as Associate Director.   COL Materia has also been subsequently reassigned numerous times and, in November 2015, lost his position without notice or reason.

58.     As a direct and proximate result of the unlawful acts of DoD and/or agents or employees acting on its behalf, including Ms. Wilson among others, Defendant is additionally liable to COL Materia for those damages, as well as for attorneys' fees, the costs of this litigation, and accrued interest.

## COUNT II:  Violation of the Rehabilitation Act of 1973, As Amended
## Discrimination Based Upon a Perceived Disability.

59.     COL Materia adopts and incorporates by reference all averments in the foregoing paragraphs.

60.     The Rehab Act prohibits federal agencies from discriminating against its employees because of a disability and/or a perceived disability.

61.     Defendant, DoD, was, at all times relevant to this matter, the employer of COL Materia for all purposes under the Rehab Act.

62.     As a result of an on-the-job injury on December 3, 2013, COL Materia fell and injured his leg, hand and foot.  COL Materia sought and received medical treatment.  He was initially diagnosed as having a sprained right hand, contusions, swelling and numbness in his left foot.  He was given crutches to assist with his mobility.  In February 2014, COL Materia had knee surgery for a torn meniscus.  COL Materia also had to take time-off from work for the surgery, additional tests, recovery, and follow-up appointments.  His physician also advised him to telework so that he could apply ice to his knee and to keep from bearing weight on his knee and leg to reduce pain, swelling and to assist with his recovery.  COL Materia used a cart for approximately three (3) weeks to get around the office.

63.     DoD and/or agents or employees acting on its behalf, including Ms. Wilson among others, knew of COL Materia's injury during the relevant time period for this Complaint and perceived him as being disabled.

64.     DoD and/or agents or employees acting on its behalf, including Ms. Wilson among others, discriminatorily reassigned COL Materia to a position with lower level responsibilities and stripped him of his title as Associate Director and the corresponding job duties and responsibilities of that position.  Further, COL Materia was discriminatorily denied a performance bonus.

65.     As a direct and proximate result of the unlawful acts of DoD and/or agents or employees acting on its behalf, including Ms. Wilson among others, COL Materia has suffered from emotional distress from being denied a performance bonus; forced to take a reassignment by Ms. Wilson; and being denied advancement in his career for discriminatory reasons related to the loss of COL Materia's job title and duties as Associate Director.   The unlawful acts of DoD and/or agents or employees acting on its behalf, including Ms. Wilson among others, have caused COL Materia embarrassment, humiliation and indignity, as well as damage to his professional reputation.

66.     As a direct and proximate result of the unlawful acts of DoD and/or agents or employees acting on its behalf, including Ms. Wilson among others, COL Materia has suffered grievous harm to his professional career.  This harm includes, but is not limited to, loss of bonus and other merit based awards; loss of annual and sick leave and other benefits associated with employment.   Further, COL Materia has suffered from a loss of professional status, career-enhancing and advancement opportunities as a result of being forced to take a reassignment by Ms. Wilson and the loss of COL Materia's job title and duties as Associate Director.  COL Materia has also been subsequently reassigned numerous times and, in November 2015, lost his position without notice or reason.

67.     As a direct and proximate result of the unlawful acts of DoD and/or agents or employees acting on its behalf, including Ms. Wilson among others, Defendant is additionally liable to COL Materia for those damages, as well as for attorneys' fees, the costs of this litigation, and accrued interest.

### COUNT III:  Violation of the Rehabilitation Act of 1973, As Amended
### Failure to Provide a Reasonable Accommodation.

68.     COL Materia adopts and incorporates by reference all averments in the foregoing paragraphs.

69.     The Rehab Act requires federal agencies to provide a reasonable accommodation to its employees because of a disability.

70.     Defendant, DoD, was, at all times relevant to this matter, the employer of COL Materia for all purposes under the Rehab Act.

71.     As a result of an on-the-job injury on December 3, 2013, COL Materia fell and injured his leg, hand and foot.  COL Materia sought and received medical treatment.  He was initially diagnosed as having a sprained right hand, contusions, swelling and numbness in his left foot.  He was given crutches to assist with his mobility.  In February 2014, COL Materia had knee surgery for a torn meniscus.  COL Materia also had to take time-off from work for the surgery, additional tests, recovery, and follow-up appointments.  His physician also advised him to telework so that he could apply ice to his knee and to keep from bearing weight on his knee and leg to reduce pain, swelling and to assist with his recovery.  COL Materia used a cart for approximately three (3) weeks to get around the office.

72.     COL Materia's disability (torn meniscus) caused him to be substantially limited in the major life activities of working, walking, and lifting, during his recuperation.  COL Materia also had difficulty driving and commuting to work.  As a result of a workers' compensation claim, the Department of Labor rated COL Materia with a partial disability rating and found that he suffered a permanent impairment in his right leg.

73.     DoD and/or agents or employees acting on its behalf, including Ms. Wilson among others, knew of COL Materia's disability during the relevant time period for this Complaint.

74.     DoD and/or agents or employees acting on its behalf, including Ms. Wilson among others, were informed that COL Materia needed to telework as a reasonable accommodation to recover from surgery; to attend doctor's appointments and other treatment and because reduced mobility made it difficult for COL Materia to travel to work.  COL Materia could fully perform his job duties and responsibilities as an Associate Director remotely from home.  Furthermore, it would be within DoD and Personnel and Readiness policy guidelines to allow telework as an accommodation.  Yet, management informed COL Materia that he could not telework and gave no reason for the refusal to allow this reasonable accommodation.

75.     COL Materia was treated differently than another younger, female employee in the office, Rachael Magann, a full-time, telework employee who had been working at home for months.  On occasion, Ms. Magann would come into the office for a meeting, but otherwise she teleworked full-time.  COL Materia was also treated differently than thousands of other DoD and other federal employees who are permitted to telework regularly.

76.     DoD and/or agents or employees acting on its behalf, including Ms. Wilson among others, failed to provide COL Materia with a reasonable accommodation and failed to engage in an effective interactive process to communicate with COL Materia and/or his physicians to determine an appropriate and reasonable accommodation for his disability as required by law.

77.     DoD and/or agents or employees acting on its behalf, including Ms. Wilson among others, failed to allow COL Materia to telework as a reasonable accommodation and failed to take other measures, such as but not limited to, a modified work schedule; the allowance of paid or unrestricted leave; and/or other such reasonable accommodations which would have allowed COL Materia to perform the essential functions of his job.

78.     As a direct and proximate result of the unlawful acts of DoD and/or agents or employees acting on its behalf, including Ms. Wilson among others, COL Materia has suffered from emotional distress from being denied a reasonable accommodation for his disability.  The unlawful acts of DoD and/or agents or employees acting on its behalf, including Ms. Wilson among others, have caused COL Materia embarrassment, humiliation and indignity, as well as damage to his professional reputation.

79.     As a direct and proximate result of the unlawful acts of DoD and/or agents or employees acting on its behalf, including Ms. Wilson among others, COL Materia has suffered grievous harm to his professional career.

80.     This harm includes, but is not limited to, loss of annual and sick leave and other benefits associated with employment, as well as loss of professional status, career-enhancing and advancement opportunities as a result of Defendant's failure to allow a reasonable accommodation.

81.     As a direct and proximate result of the unlawful acts of DoD and/or agents or employees acting on its behalf, including Ms. Wilson among others, Defendant is additionally liable to COL Materia for those damages, as well as for attorneys' fees, the costs of this litigation, and accrued interest.

## COUNT IV:  Violation of the Rehabilitation Act of 1973, As Amended Hostile Work Environment and Harassment Based Upon a Disability and/or Perceived Disability.

82.     COL Materia adopts and incorporates by reference all averments in the foregoing paragraphs.

83.     The Rehab Act prohibits federal agencies from creating a hostile work environment or engaging in harassment against its employees because of a disability and/or a perceived disability.

84.     Defendant, DoD, was, at all times relevant to this matter, the employer of COL Materia for all purposes under the Rehab Act.

85.     As a result of an on-the-job injury on December 3, 2013, COL Materia fell and injured his leg, hand and foot.  COL Materia sought and received medical treatment.  He was initially diagnosed as having a sprained right hand, contusions, swelling and numbness in his left foot.  He was given crutches to assist with his mobility.  In February 2014, COL Materia had knee surgery for a torn meniscus.  COL Materia also had to take time-off from work for the surgery, additional tests, recovery, and follow-up appointments.  His physician also advised him to telework so that he could apply ice to his knee and to keep from bearing weight on his knee and leg to reduce pain, swelling and to assist with his recovery.  COL Materia used a cart for approximately three (3) weeks to get around the office.

86.     DoD and/or agents or employees acting on its behalf, including Ms. Wilson among others, knew of COL Materia's injury during the relevant time period for this Complaint and believed him to be disabled and/or perceived him as being disabled.

87.     DoD and/or agents or employees acting on its behalf, including Ms. Wilson among others, created a hostile work environment by reassigning COL Materia to a position with lower level responsibilities; stripping him of his title as Associate Director and the corresponding job duties and responsibilities of that position and denying him a performance bonus.  Further, COL Materia was harassed and subjected to a hostile work environment when Defendant refused, with no explanation, to allow him to telecommunicate as a reasonable accommodation; informed COL Materia that he could "telework permanently;" failed to hold a farewell gathering before his involuntary reassignment; gave him "bonbons" as an insult; called him "Jumping Joe" and/or other

embarrassing nick names or jokes due to his forced reassignment; and disclosed to colleagues that he had filed an EEO complaint.

88.     As a direct and proximate result of the unlawful acts of DoD and/or agents or employees acting on its behalf, including Ms. Wilson among others, COL Materia has suffered from emotional distress from being harassed and subjected to a hostile work environment because of his disability and/or perceived disability.  The unlawful acts of DoD and/or agents or employees acting on its behalf, including Ms. Wilson among others, have caused COL Materia embarrassment, humiliation and indignity, as well as damage to his professional reputation.

89.     As a direct and proximate result of the unlawful acts of DoD and/or agents or employees acting on its behalf, including Ms. Wilson among others, COL Materia has suffered grievous harm to his professional career.

90.     This harm includes, but is not limited to, loss of bonus and other merit based awards; loss of annual and sick leave and other benefits associated with employment.  Further, COL Materia has suffered from a loss of professional status, career-enhancing and advancement opportunities as a result of being harassed and subjected to a hostile work environment because of his disability and/or perceived disability.

91.     As a direct and proximate result of the unlawful acts of DoD and/or agents or employees acting on its behalf, including Ms. Wilson among others, Defendant is additionally liable to COL Materia for those damages, as well as for attorneys' fees, the costs of this litigation, and accrued interest.

### COUNT V:  Violation of the ADEA As Amended
### Age Discrimination.

92.     COL Materia adopts and incorporates by reference all averments in the foregoing paragraphs.

93.     The ADEA prohibits federal agencies from discriminating against its employees because of their age.

94.     Defendant, DoD, was, at all times relevant to this matter, the employer of COL Materia for all purposes under the ADEA.

95.     COL Materia was over the age of forty (40) years (YOB: 1950) at all times relevant to this Complaint.

96.     DoD and/or agents or employees acting on its behalf, including Ms. Wilson among others, knew of COL Materia's approximate age and the fact that he was over the age of forty (40) years (YOB: 1950) at all times relevant to this Complaint.

97.     DoD and/or agents or employees acting on its behalf, including Ms. Wilson among others, discriminatorily reassigned COL Materia to a position with lower level responsibilities and stripped him of his title as Associate Director and the corresponding job duties and responsibilities of that position.  Further, COL Materia was discriminatorily denied a performance bonus.

98.     COL Materia was treated differently than a younger contractor, namely Josh Maddox, when Defendant assigned Mr. Maddox the responsibility of coordinating and managing the JEC.  As Associate Director, COL Materia had been responsible for managing the JEC and his forced reassignment took this responsibility away from COL Materia's purview.  COL Materia was also not allowed to work on a conference which he had proposed and planned for over a year because of his reassignment and, instead, Ms. Wilson assigned Mr. Maddox this task.

99.     COL Materia was treated differently than another younger, female employee in the office, Rachael Magann, a full-time, telework employee who had been working at home for months.  On occasion, Ms. Magann would come into the office for a meeting, but otherwise she teleworked full-time.  DoD and/or agents or employees acting on its behalf, including Ms. Wilson

among others, were aware that COL Materia needed to telework as a reasonable accommodation to recover from an on-the-job injury he sustained on December 3, 2013 and which later required surgery.  Yet, unlike Ms. Magann, COL Materia was not allowed to telework.

100.    As a direct and proximate result of the unlawful acts of DoD and/or agents or employees acting on its behalf, including Ms. Wilson among others, COL Materia has suffered from emotional distress from being denied a performance bonus; forced to take a reassignment by Ms. Wilson; and being denied advancement in his career for discriminatory reasons related to the loss of COL Materia's job title and duties as Associate Director.   The unlawful acts of DoD and/or agents or employees acting on its behalf, including Ms. Wilson among others, have caused COL Materia embarrassment, humiliation and indignity, as well as damage to his professional reputation.

101.    As a direct and proximate result of the unlawful acts of DoD and/or agents or employees acting on its behalf, including Ms. Wilson among others, COL Materia has suffered grievous harm to his professional career.  This harm includes, but is not limited to, loss of bonus and other merit based awards; loss of annual and sick leave and other benefits associated with employment.   Further, COL Materia has suffered from a loss of professional status, career-enhancing and advancement opportunities as a result of being forced to take a reassignment by Ms. Wilson and the loss of COL Materia's job title and duties as Associate Director.  COL Materia has also been subsequently reassigned numerous times and, in November 2015, lost his position without notice or reason.

102.    As a direct and proximate result of the unlawful acts of DoD and/or agents or employees acting on its behalf, including Ms. Wilson among others, Defendant is additionally

liable to COL Materia for those damages, as well as for attorneys' fees, the costs of this litigation, and accrued interest.

### COUNT VI:  Violation of the ADEA As Amended
### Hostile Work Environment and Harassment Based Upon Age.

103.    COL Materia adopts and incorporates by reference all averments in the foregoing paragraphs.

104.    The ADEA prohibits federal agencies from creating a hostile work environment or engaging in harassment against its employees because of because of their age.

105.    Defendant, DoD, was, at all times relevant to this matter, the employer of COL Materia for all purposes under the ADEA.

106.    COL Materia was over the age of forty (40) years (YOB: 1950) at all times relevant to this Complaint.

107.    DoD and/or agents or employees acting on its behalf, including Ms. Wilson among others, knew of COL Materia's approximate age and the fact that he was over the age of forty (40) years (YOB: 1950) at all times relevant to this Complaint.

108.    DoD and/or agents or employees acting on its behalf, including Ms. Wilson among others, created a hostile work environment by reassigning COL Materia to a position with lower level responsibilities; stripping him of his title as Associate Director and the corresponding job duties and responsibilities of that position and denying him a performance bonus.  Further, COL Materia was harassed and subjected to a hostile work environment when Defendant refused, with no explanation, to allow him to telecommunicate as a reasonable accommodation; informed COL Materia that he could "telework permanently;" failed to hold a farewell gathering before his involuntary reassignment; gave him "bonbons" as an insult; called him "Jumping Joe" and/or other

embarrassing nick names or jokes due to his forced reassignment; and disclosed to colleagues that he had filed an EEO complaint.

109.    As a direct and proximate result of the unlawful acts of DoD and/or agents or employees acting on its behalf, including Ms. Wilson among others, COL Materia has suffered from emotional distress from being harassed and subjected to a hostile work environment because of his age.  The unlawful acts of DoD and/or agents or employees acting on its behalf, including Ms. Wilson among others, have caused COL Materia embarrassment, humiliation and indignity, as well as damage to his professional reputation.

110.    As a direct and proximate result of the unlawful acts of DoD and/or agents or employees acting on its behalf, including Ms. Wilson among others, COL Materia has suffered grievous harm to his professional career.  This harm includes, but is not limited to, loss of bonus and other merit based awards; loss of annual and sick leave and other benefits associated with employment.  Further, COL Materia has suffered from a loss of professional status, career-enhancing and advancement opportunities as a result of being harassed and subjected to a hostile work environment because of his age.

111.    As a direct and proximate result of the unlawful acts of DoD and/or agents or employees acting on its behalf, including Ms. Wilson among others, Defendant is additionally liable to COL Materia for those damages, as well as for attorneys' fees, the costs of this litigation, and accrued interest.

**COUNT VII:  <u>Violation of Title VII As Amended
Sex Discrimination</u>.**

112.    COL Materia adopts and incorporates by reference all averments in the foregoing paragraphs.

113.    Title VII prohibits federal agencies from discriminating against its employees because of their gender or sex (male).

114.    Defendant, DoD, was, at all times relevant to this matter, the employer of COL Materia for all purposes under Title VII.

115.    DoD and/or agents or employees acting on its behalf, including Ms. Wilson among others, discriminatorily reassigned COL Materia to a position with lower level responsibilities and stripped him of his title as Associate Director and the corresponding job duties and responsibilities of that position.

116.    DoD and/or agents or employees acting on its behalf, including Ms. Wilson among others, were aware that COL Materia needed to telework as a reasonable accommodation to recover from an on-the-job injury he sustained on December 3, 2013 and which later required surgery.

117.    COL Materia was treated differently than another younger, female employee in the office, Rachael Magann, a full-time, telework employee who had been working at home for months.  On occasion, Ms. Magann would come into the office for a meeting, but otherwise she teleworked full-time.

118.    As a direct and proximate result of the unlawful acts of DoD and/or agents or employees acting on its behalf, including Ms. Wilson among others, COL Materia has suffered from emotional distress from being forced to take a reassignment by Ms. Wilson and being denied advancement in his career for discriminatory reasons related to the loss of COL Materia's job title and duties as Associate Director.   The unlawful acts of DoD and/or agents or employees acting on its behalf, including Ms. Wilson among others, have caused COL Materia embarrassment, humiliation and indignity, as well as damage to his professional reputation.

119.    As a direct and proximate result of the unlawful acts of DoD and/or agents or employees acting on its behalf, including Ms. Wilson among others, COL Materia has suffered grievous harm to his professional career.  This harm includes, but is not limited to, loss of professional status, career-enhancing and advancement opportunities as a result of being forced to take a reassignment by Ms. Wilson and the loss of COL Materia's job title and duties as Associate Director.  COL Materia has also been subsequently reassigned numerous times and, in November 2015, lost his position without notice or reason.

120.    As a direct and proximate result of the unlawful acts of DoD and/or agents or employees acting on its behalf, including Ms. Wilson among others, Defendant is additionally liable to COL Materia for those damages, as well as for attorneys' fees, the costs of this litigation, and accrued interest.


## RELIEF SOUGHT

**WHEREFORE**, COL Materia requests that this Court award damages against Defendant and respectfully requests the Court to:

A.    Enter judgment for Plaintiff against Defendant on all Counts;

B.    Declare that Defendant subjected Plaintiff to discrimination because of his disability in violation of the Rehabilitation Act of 1973, as amended;

C.    Declare that Defendant subjected Plaintiff to discrimination because of a perceived disability in violation of the Rehabilitation Act of 1973, as amended;

D.    Declare that Defendant subjected Plaintiff to disability discrimination by failing to provide him a reasonable accommodation in violation of the Rehabilitation Act of 1973, as amended;

E.    Declare that Defendant subjected Plaintiff to a hostile work environment and harassment because of his disability and/or perceived disability in violation of the Rehabilitation Act of 1973, as amended;

F.    Declare that Defendant subjected Plaintiff to discrimination because of his age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et. seq.*;

G.    Declare that Defendant subjected Plaintiff to a hostile work environment and harassment because of his age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et. seq.*;

H.    Declare that Defendant subjected Plaintiff to discrimination because of his sex or gender in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*;

I.    Award Plaintiff damages for loss of benefits, entitlements, loss of professional status and career-enhancing opportunities, performance bonuses, annual and sick leave, and other remuneration and privileges of employment retroactive to the date of any unlawful action found to have occurred in this case;

J.    Award Plaintiff compensatory damages for the emotional distress injuries and losses that he suffered in an amount to be proved at trial;

K.    Award Plaintiff pecuniary and out of pocket expenses;

L.    Enjoin Defendant from future retaliation and discrimination against Plaintiff;

M.    Order Defendant to pay all reasonable attorneys' fees, court costs, and expenses Plaintiff has and will incur as a result of Defendant's actions and inactions, as well as pre-judgment and post-judgment interest; and,

N.    Order such other equitable and legal relief as the Court deems necessary and appropriate to make Plaintiff whole.

## **JURY DEMAND**

Plaintiff requests a trial by a jury as to all claims set forth in this Complaint.

Respectfully submitted,

 _/s/ Camilla C. McKinney_____
Camilla C. McKinney, Esq.
D.C. Bar No. 448776
McKinney & Associates, PLLC
1250 Connecticut Avenue, NW, Suite 200
Washington, DC  20036
(202) 470-0935 (telephone)
(877) 590-4777 (facsimile)
CMcKinney@DCEmploymentLawyer.com
***Attorneys for Plaintiff Joseph Materia***